United States District Court
Western District of Michigan

Case No. _____

Bernard Hardrick,
    Plaintiff,

V.

Psych Harris,
Psych Green,
Baily-Webb (Mental Health),
Erica Huss (Warden),
    Defendants,
(In Their Individual Capacity).

**FILED**
March 1, 2022 12:56 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: mlc SCANNED BY: /s/ 3/1/22

2:22-cv-44
Maarten Vermaat
U.S. Magistrate Judge

Jury Trial Demanded

There is no other pending or resolved civil action arising out of the same transaction or occurance as alleged in this complaint.

## I. Jurisdiction And Venue

1. This is a civil action authorized by 42 USC §1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. This Court has proper jurisdiction under 28 USC §1331 and 1343(a)(3).

2. The Western District Court is an appropriate venue under 28 USC §1391(b)(2) because it is where the events giving rise to this claim occured.

## II. Plaintiff

3. The Plaintiff, Bernard Hardrick, (hereinafter "Plaintiff"), is/was at all times mentioned herein a prisoner of the Michigan Department of Corrections ("MDOC"), located at: Marquette Branch Prison ("MBP"), 1960 US HWY 41 South, Marquette, MI 49855; where the cause of this action occurred.

4. The Plaintiff seeks redress in this Court for the violations of his Eighth Amendment right to receive mental/medical treatment, and his First Amendment right to be free from retaliation where the Defendants deliberately refused to provide him mental health treatment after learning of his mental anxiety condition that caused him to chew the flesh off his own hands, again, and where Defendant Huss intentionally refused to order her Mental Health staff to evaluate or provide the Plaintiff treatment due to the grievances he has filed on her staff.

1.

## III. Defendants

5. Defendants Psych Harris (hereinafter "Mr. Harris"), Psych Green (hereinafter "Mr. Green"), and Baily-Webb (hereinafter "Ms. Webb"), are/were employed as Mental Health Personnel here at MBP during the course of events alleged in this complaint. These defendants are identified collectively as "Mental Health Staff" herein this complaint. Defendants "Mental Health Staff" are accused of deliberately failing to provide the Plaintiff mental health treatment after learning, again, that the Plaintiff started back chewing the flesh off his own hands due to extreme anxiety that he suffers which causes disfunction and bleeding of his hands just as it did before back in 2020 when he first reported the self-injurious mental ailment to the Defendants, in violation of his Eighth Amendment right to receive mental/medical treatment.

6. Defendant, Erica Huss, (hereinafter "Ms. Huss" or "Warden Huss"), is/was at all times mentioned, the Warden here at MBP during the course of events alleged in this complaint. Ms. Huss is accused of being deliberately indifferent towards the Plaintiff's need for mental/medical treatment after baring witness herself of the injuries inflected upon the Plaintiff's hands from chewing/biting the flesh off of them hiself and still refusing to see to it that her Mental Health staff at least provide evaluation of the Plaintiff's obvious self-injurious mentality, in violation of his Eighth Amendment right. Ms. Huss is also accused of expressing retaliatory misconduct when, after the Plaintiff pleaded for her to help him receive treatment, she refused to do so by commenting on how the Plaintiff "likes to filer grievances" when she denied his plea for help, in violation of his First Amendment right.

## IV. Statement of Facts

7. In June of 2021, the Plaintiff began chewing/biting the flesh off his own hands, again, due to extreme anxiety that he suffers from which causes bleeding and disfunction of his fingers at times, interfering with his normal routine of writing, working out, eating... etc.

8. The Plaintiff reported this mental ailment which causes him to inflict injury upon himself back around October of 2020 to "Mental Health Staff" in which he had ceased from doing in early 2021, but started back again in June of 2021 due to ongoing, untreated anxiety.

2.

9. The Plaintiff spoke directly with Defendants Harris and Green in July of 2021 when they made a round in the unit (G-unit) and notified them of his ongoing mental ailment that causes him to chew/bite the flesh off his own hands, revealing to them the self-inflicted wounds that were obvious on his hands explaining to them that he was back suffering from extreme anxiety.

10. It was on July 28, 2021 around 9:30am when the Plaintiff spoke directly with Defendant Green when he conducted a round in the unit and had the opportunity to inform Green of his mental ailment and show him his self-inflicted wounds on his hands in which Green responded to the Plaintiff's report stating: "I understand your concerns Mr. Hardrick, but it's not that serious of a case to require immediate treatment... That's childs play compared to what goes on around here."

11. On 8/11/21, the Plaintiff filed a 'Mental Health' Kite informing "Mental Health Staff" that he was still suffering from extreme anxiety that caused him to chew/bite the flesh off of his hands causing them to bleed — impairing the functioning of his fingers. (See, Mental Health Kite attached as Exhibit A)

12. That same day (8/11/21), before the Plaintiff submitted the 'Mental Health' Kite, the Plaintiff had an opportunity to speak directly with Defendant Warden Huss as she made a round in the unit around 4:05pm.

13. The Plaintiff informed Warden Huss of the issue concerning his anxiety that causes him to chew the flesh off his own hands and showed her his obvious injuries while pleading for her to order "Mental Health Staff" to conduct an evaluation.

14. After discussing the matter with Ms. Huss, the Plaintiff was bewildered by Huss' response to the matter when she laughed at him and mumbled under her breath "What a retard" as she began to walk away.

15. The Plaintiff then had a second encounter with both Harris and Ms. Huss on 8/16/21 as they conducted another round in the unit.

3.

16. The Plaintiff spoke directly with Mr. Harris, again, and asked if he had received the 'Mental Health' Kite that he filed in which Harris confirmed that he received the Kite concerning the Plaintiff's mental conditions.

17. Mr. Harris then stated to the Plaintiff that his claim "is not that serious," be he would call the Plaintiff out for an evaluation in a couple of weeks "just to entertain the bullshit."

18. The Plaintiff then spoke directly with Warden Huss as she was moving swiftly pass his cell when he tried to grab her attention by yelling out: "Ms. Huss! Ms. Huss! Can you please get Mental Health to take my case serious!"

19. Warden Huss quickly responded as she flew pass: "I don't give a shit about you eating yourself Hardrick!.... File a grievance and see how far you get since that's what you like to do around here."

20. On or about 8/26/21, around 8:30am, Mr. Harris called the Plaintiff over to the Medical Center to meet with him in person for a so-called Psych evaluation.

21. During the meeting with Harris, the Plaintiff explained how he believed the extreme anxiety began due to being forced to house in the same unit with Covid-positive inmates when he arrived at MBP in 2020, while showing Mr. Harris the obvious wounds on his hands from the self-inflicted injury caused by chewing/biting the flesh off his hands.

22. The meeting with Harris lasted roughly 20 minutes with Harris mostly expressing to the Plaintiff how his condition was not that serious; that the Covid Pandemic at MBP in 2020 was not that detrimental; and how the meeting was moreso just a waste of time due to having more serious case loads to handle.

23. The meeting then ended with Mr. Harris informing the Plaintiff to Kite him if his conditions worsened.

24. The next day, on 8/27/21, Defendant Baily-Webb called the Plaintiff out into the officer's station to conduct an interview with concerning the grievance (Exhibit B) that the Plaintiff filed against Harris, Green, and Huss on 8/18/21 for their deliberate indifference towards his need for mental health treatment along with Huss' retaliatory misconduct.

4.

25. During the interview with Baily-Webb, the Plaintiff explained to her how the extreme anxiety that he suffered from caused him to chew/bite the flesh off of his own hands as he showed Baily-Webb the self-inflicted injuries on his hands.

26. Baily-Webb informed the Plaintiff that his case was not that serious and that she and the other "Mental Health Staff" members were too busy dealing with more serious, real cases with no time to waste on the Plaintiff's minute complaints.

27. Bail-Webb then informed the Plaintiff that she would be denying his grievance as containing "multiple issues" because the claim against Warden Huss was allegedly irrelevent due to Huss not being able to tell "Mental Health Staff" what to do.

## V. Exhaustion Of Remedies

28. The Plaintiff filed a step 1 grievance #MBP-2109-1025-12B against Psych Harris, Psych Green, and Warden Huss concerning their deliberate indifference towards the Plaintiff's need for mental health treatment for the reasons elicited in this complaint. (See, Step 1 Grievance attached as Exhibit B)

29. Baily-Webb interviewed the Plaintiff on the merits concerning denial of mental health treatment by Harris and Green, and denied the grievance for containing "multiple issues" in the grievance in violation of PD 03.02.130(1) which states reasons for rejection: "It is vague, illegible, or contains multiple unrelated issues." (See step 1 Response attached as Exhibit B)

30. However, Baily-Webbs' denial of the grievance fails and sabataged the procedural process for the following reasons: (1) Per PD 03.02.130(4), only the "Grievance Coordinator" shall determine if the grievance should be rejected pursuant to the policy; stating in pertinent part: "After receipt of the grievance, the Grievance Coordinator shall determine if the grievance should be rejected pursuant to this policy. If the grievance is rejected, the grievance response shall state the reason for the rejection without addressing the merits of the grievance." Further stating in pertinent part: "If the grievance is accepted, the Grievance Coordinator shall assign an appropriate respondant and identify the date by which the response is due. The respondent shall generally be the supervisor being grieved." And (2): Though Baily-Webb denied the grievance for allegedly containing "multiple issues", she did not state in her response that it was denied as for containing "multiple unrelated issues" pursuant to PD 03.02.130 (J)(1). (See, Step 1 Response attached as Exhibit B)

5.

1. The Plaintiff then filed a step II appeal for grievance MBP-2109-1025-12B realleging the same issues at step 1 and further grieving Baily-Webbs egregious decision to deny the complaint without taking his issue serious.

2. The Step II appeal was then responded to, and denied by, Warden Huss in violation of PD 03.02.130(V) due to the fact that she was named as a subject offender of the issue raised in the grievance.

3. The Plaintiff then filed a step III appeal contending the fact that Warden Huss sabatoged the grievance process by violating PD 03.02.130(V) which states:

   "Prisoners and staff who may be involved in the issue being grieved shall not participate in any capacity in the grievance investigation, review, or response, except as necessary to provide information to the respondent."

34. The Step III appeal was denied upholding the decision that the grievance contained multiple issues. (see, Step II and Step III form attached as Exhibit C)

35. On 8/27/21, after the interview on the grievance with Baily-Webb, the Plaintiff filed a step 1 Grievance against Warden Huss for the so-called seperate retaliation and failure to act claim against her. The Plaintiff also filed a seperate step 1 grievance against Baily-Webb complaining of her deliberate indifference towards the Plaintiff's need for mental health treatment by failing to act on the obvious issues exhibited by the Plaintiff's conduct of chewing the flesh off of his hands.

36. The Plaintiff never received a response from the Grievance Coordinator on the grievances filed against Warden Huss or Baily-Webb nor were they ever processed or registered a grievance identification number.

37. On or about 9/12/22, after 15 days pass without receiving any response to the said grievances, the Plaintiff sent a kite to the Grievance Coordinator requesting a step II appeal form or a response to the grievances, but to no avail. The Plaintiff then filed a handwritten step II appeal for each grievance mentioned.

38. On or about 9/28/22, after 15 days passed without receiving any response to the step II appeals concerning Warden Huss and Baily-Webb, the Plaintiff drafted a Handwritten step III appeal form for each grievance, and mailed them to the Director's office in Lansing, MI, by regular postal service and, as of date, the Plaintiff has not received any response to either of the two step III appeals.

6.

39. Therefore, for the foresaid reasons, the Plaintiff has exhausted all of his available administrative remedies for the claims raised in this complaint against Defendants.

## VI. Legal Claims

40. The Plaintiff realleges and incorporates by reference the factual allegations stated in paragraphs 1-39 as though fully asserted herein this section.

41. The actions of Defendants Harris, Green, Baily-Webb, and Ms. Huss, as alleged in this complaint, in deliberately refusing to provide the Plaintiff any mental health treatment after learning of his mental ailment which causes him to continue to chew the flesh off of his own hands, constitutes as a violation of the Plaintiff's Eighth Amendment right to receive mental/medical treatment.

42. The actions of Defendant Warden Huss, as alleged in this complaint, when she deliberately denied and/or failed to act on the Plaintiff's obvious need for mental health due to the fact that the Plaintiff has a reputation for filing grievances, constituted as a violation of the Plaintiff's First Amendment right to be free from retaliatory misconduct for petitioning state government employees.

## VII. Relief Sought

Wherefore, the Plaintiff request for this Honorable Court to grant the following relief:

A.) Award compensatory damages in the following amounts:

1. $100,000 jointly and severally against all the Defendants for deliberately denying the Plaintiff mental health treatment, as alleged in this complaint, in violation of his Eighth Amendment right.

2. $25,000 against Defendant Warden Huss for her retaliatory misconduct towards the Plaintiff for filing grievances, as alleged in this complaint, in violation of his First Amendment right.

B.) Award punitive damages in the following amounts:

1. $100,000 jointly and severally against all the Defendants for deliberately denying the Plaintiff mental health treatment, as alleged in this complaint, in violation of his Eighth Amendment right.

2. $25,000 against Defendant Warden Huss for her retaliatory misconduct towards the Plaintiff, as alleged in this complaint, in violation of his First Amendment right.

C.) Award nominal damages in the following amount:
   1. $10,000 jointly and severally against all the Defendants.

D.) Award all costs and fees to the Plaintiff against the Defendants for having to file this action.

E.) Award any other relief this Court deems equitable and just in favor of the Plaintiff.

## VIII. Verification

I, Bernard Hardrick, pursuant to 28 USC§1746, declare under the penalty of perjury, that I have examined the contents of this Complaint and that the statements made are true and correct, and I am willing to testify in Court to the truthfulness of the statements made herein this complaint.

Dated: February 24, 2022

Truthfully Submitted,

Bernard Hardrick

Bernard Hardrick #606507
Marquette Branch Prison
1960 US HWY 41 South
Marquette, MI 49855



US District Court
Court Clerk Office
P.O. Box 698
Marquette, MI 49855