UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

BERNARD HARDRICK,

        Plaintiff,                     Case No. 2:22-cv-44

v.                                         Honorable Paul L. Maloney

UNKNOWN HARRIS et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Unknown Bailey-Webb and Erica Huss.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about

which he complains, however, occurred at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. Plaintiff sues mental health personnel at MBP—"Psych Harris," "Psych Green," and Unknown Bailey-Webb. He also sues MBP Warden Erica Huss.

Plaintiff reports that he suffers from extreme anxiety. He contends that his anxiety causes him to chew or bite the flesh off his hands. (ECF No. 1, PageID.2.) Plaintiff claims the biting "causes bleeding and disfunction of his fingers, at time . . . ." (*Id.*)

This is not the first time Plaintiff has raised this concern. In *Hardrick v. Hares*, No. 2:21-cv-64 (W.D. Mich.), Plaintiff alleged that he suffered "anxiety that causes him to bite the flesh off his own hands." *Id.*, (Compl., ECF No. 1, PageID.3.) In that case, Plaintiff sued MBP Mental Health Chief Mark Hares, Assistant Mental Health Service Director Thomas Osier, and Mental Health personnel Unknown Holdwick and Unknown Green. Plaintiff also sued Warden Erica Huss. The Court concluded that Plaintiff had stated a claim against Defendants Hares and Holdwick, but that Plaintiff had failed to state a claim against Defendants Huss, Green, and Osier. *Id.*, (Op. and Order., ECF Nos. 4, 5.)

Plaintiff's claims against Defendants Hares and Hardwick proceeded to mediation. The parties settled the case on August 16, 2021.

Plaintiff now acknowledges that the anxiety/chewing problem had resolved in early 2021. (Compl., ECF No. 1, PageID.2.) But it "started back again in June of 2021 due to ongoing untreated anxiety." (*Id.*) Plaintiff reports that he spoke directly to Defendants Harris and Green during July of 2021, informing them that the anxiety/chewing problem continued. He showed them his hands. On July 28, 2021, Defendant Green told Plaintiff that he did not consider Plaintiff's case so serious that it required immediate treatment.

2

On August 11, 2021, Plaintiff wrote a mental health kite to "mental health staff" informing them that he still suffered the anxiety/chewing problem. That same day, Plaintiff spoke to Defendant Huss, informing her of the problem and asking her to order mental health staff to evaluate Plaintiff. (*Id*., PageID.3.) Plaintiff reports that Defendant Huss called Plaintiff a "retard."

On August 16, 2021—the very day he settled his first anxiety/chewing suit—Plaintiff spoke with Defendant Harris. Harris repeated the conclusion that it was not that serious a problem but informed Plaintiff he would call Plaintiff out in a couple of weeks for an evaluation. (*Id*., PageID.4.) Plaintiff spoke again to Defendant Huss. She said: "I don't give a shit about you eating yourself Hardrick!" (*Id*.) But she suggested that he file a grievance. Plaintiff did.

On August 26, 2021, Defendant Harris evaluated Plaintiff regarding his claim of extreme anxiety. Harris again concluded that Plaintiff's condition was "not that serious." (*Id*.)

The next day, Defendant Bailey-Webb interviewed Plaintiff regarding the grievance he had filed against Green, Harris, and Huss. Bailey-Webb also told Plaintiff that his condition was "not that serious." (*Id*., PageID.5.)

Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs and that Defendant Huss retaliated against him. He seeks hundreds of thousands of dollars in compensatory, punitive, and nominal damages.

Six months passed after the last events alleged before he filed the complaint. He does not allege that he continues to suffer the anxiety/chewing problem or indicate whether it resolved on its own, without treatment, as it did the first time. Plaintiff alleges that his anxiety chewing interferes with his ability to write. Because he has filed many handwritten complaints since the events of which he complains, it does not appear that the anxiety/chewing problem meaningfully interfered with his ability to write during or after the fall of 2021.

3

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271

4

(1994). Plaintiff claims that Defendants violated his Eighth Amendment rights because they were deliberately indifferent to Plaintiff's serious mental health needs. Plaintiff claims Defendant Huss failed to act on Plaintiff's obvious need for mental health care because "Plaintiff has a reputation for filing grievances . . . ." (Compl., ECF No. 1, PageID.7.)

### A.     Deliberate indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). Medical care includes medically necessary mental health treatment to inmates. *See id.* at 103; *Gov't of the Virgin Islands v. Martinez*, 239 F.3d 293, 301 (3d Cir. 2001); *Lay v. Norris*, No. 88-5757, 1989 WL 62498, at *4 (6th Cir. June 13, 1989); *Potter v. Davis*, No. 82-5783, 1985 WL 13129, at *2 (6th Cir. April 26, 1985).

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious

5

harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

It is difficult to assess the obviousness or the seriousness of Plaintiff's medical need. He indicates that he suffers from anxiety. At some times that anxiety is sufficiently severe that it causes him to chew on his hands and fingers. A layman might not be aware that finger-chewing evidences a serious medical need; but it appears to be a possible manifestation of anxiety, obsessive/compulsive disorder, or other disorders. *See, e.g., Champion v. Outlook Nashville, Inc.*,

380 F.3d 893 (6th Cir. 2004); *Q.W. ex rel. M.W. v. Bd. of Ed. of Fayette Cnty., Ky.*, No. 5:14-126-DCR, 2015 WL 197418 (E.D. Ky. Jan. 14, 2015); *Tate ex rel. Tate v. Comm'r of Soc. Sec.*, 368 F.Supp.2d 661 (E.D. Mich. 2005); *Luukkonen v. Comm'r of Soc. Sec.*, No. 1:13-CV-1115 (W.D. Mich. Mar. 11, 2015); *Fisher v. Comm'r of Soc. Sec.*, No. 1:19-cv-1777 (N.D. Ohio Jul. 22, 2020); *Sizemore v. Comm'r of Soc. Sec.*, No. 1:13-cv-521, 2014 WL 4549020 (S.D. Ohio Sept. 12, 2014); *Hudson v. Astrue*, No. 2:10-CV-248, 2011 WL 4738284 (E.D. Tenn. Sept. 20, 2011).

Plaintiff alleges that the condition impacts the function of his hands and fingers. And he states that he showed his hands to Defendants Harris, Green, and Huss. Plaintiff alleges that his need was serious; Defendants concluded that it was not. Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage of the proceedings, Plaintiff has sufficiently alleged the objective component of his claim.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150

8

F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff alleges that he received no treatment. He acknowledges that he was evaluated, but that both Harris and Green concluded that Plaintiff's condition was not so serious that treatment was required. It may well be that the medical response of Harris and Green was perfectly appropriate; however, accepting that the medical need was serious, their choice to provide no treatment is a conscious disregard of that need. Therefore, at least with regard to Defendants Harris and Green, Plaintiff's complaint sufficiently alleges the subjective component.

Defendants Huss and Bailey-Webb did not "disregard" Plaintiff's need in the same way. Plaintiff alleges that he asked Defendant Huss to have the mental health staff evaluate Plaintiff. (Compl., ECF No. 1, PageID.3, ¶13.) Within a few days, Defendant Harris informed Plaintiff that he would evaluate Plaintiff. Although the words Plaintiff attributes to Huss might reflect her disdain for him, Plaintiff's allegations do not support an inference that the words reflect a conscious disregard for a substantial risk of serious harm. To the contrary, Plaintiff asked for an evaluation and he received an evaluation.

Moreover, Plaintiff acknowledges that Huss is an administrative official, not a healthcare professional. "[A] non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when [s]he reasonably deferred to the medical professionals' opinions."

9

*Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 608 (6th Cir. 2022) (internal quotation marks omitted) (quoting *McGaw v. Sevier Cnty., Tenn.*, 715 F. App'x 495, 498 (6th Cir. 2017)); *see also Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) (concluding that nonmedical jail personnel are entitled to reasonably rely on the assessments made by the medical staff); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same). In this case, all of the healthcare professionals concluded that Plaintiff's condition was not serious, and that conclusion was backed up by experience in that the same symptoms had resolved without any treatment previously. Accordingly, Plaintiff's allegations do not support an inference that Defendant Huss consciously disregarded a serious medical need, and Plaintiff's Eighth Amendment claim against her will be dismissed.

Plaintiff's allegations regarding Defendant Bailey-Webb also fail to support an inference of deliberate indifference to a serious medical need. Defendant Bailey-Webb, according to the grievance response attached to Plaintiff's complaint, is a licensed master social worker. (ECF No. 1-2, PageID.14–15.) Bailey-Webb's only involvement in this matter was her response to Plaintiff's grievance.

Plaintiff filed his grievance before his evaluation by Defendant Harris, but Bailey-Webb interviewed Plaintiff regarding the grievance the day after the evaluation. Her investigation summary reads as follows:

> Inmate was interviewed this date. QMHP Harris was interviewed the day prior. Inmate reports that he had an extended conversation with the QMHP and was nominally satisfied with interview. He was advised that his gr[ie]vance with the warden was inappropriate to include in this gr[ie]vance regarding Mental Health

> treatment and it would be denied on that basis. He agreed to kite for further assistance and was further advised of best approach considering current caseload demands on QMHP staff. He acknowledged.

(ECF No. 1-2, PageID.15.) Bailey-Webb then resolved the grievance as follows:

> Inmates's [grievance] is denied due to including multiple issues. He was advised of gr[ie]vance procedure and process to address his multiple complaints. Mental Health complaints were addressed within the scope of Mental Health practice, availability and level of concerns presented. Inmate refused to sign off to leave option open to pursue at a later date. Inmate is being followed by mental health in accordance with PD 04.06.180, PD 04.06.183, 05.01.120.

(*Id.*) Plaintiff followed up on Bailey-Webb's suggestion regarding separating his claims against Defendant Huss from his claims relating to mental health treatment. He filed a separate grievance against Huss that same day. (Compl., ECF No. 1, PageID.6.)

Plaintiff contends that Bailey-Webb is also liable for being deliberately indifferent to Plaintiff's serious medical need. His claim fails for two reasons. First, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). That is all that Defendant Bailey-Webb did here—she responded to a grievance.

But even if Bailey-Webb's participation in the grievance process were enough to establish liability, the facts alleged do not support an inference that she was deliberately indifferent to Plaintiff's medical need. She spoke with Plaintiff about his condition and she spoke with Harris about his recent evaluation. She advised Plaintiff to kite for mental health treatment if he needed further assistance. Nothing that Bailey-Webb did or said bespeaks a conscious disregard to Plaintiff's medical need. Therefore, Plaintiff fails to state a deliberate indifference claim against her.

11

### B. Retaliation

Plaintiff also claims that Defendant Huss retaliated against Plaintiff. He states that Huss deliberately denied him treatment "due to the fact that the Plaintiff has a reputation for filing grievances . . . ." (Compl., ECF No. 1, PageID.7.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At the first step of the retaliation analysis, the filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). But the grievances Plaintiff specifically mentions in his complaint were filed after the alleged adverse action; indeed the grievances complain about the alleged adverse action. Therefore, they cannot be the protected conduct that purportedly motivated the adverse action. Apparently recognizing that problem, Plaintiff does not claim any one of those grievances were his protected conduct; rather, he complains that it was his "reputation for filing grievances." (Compl., ECF No. 1, PageID.7.) The Court will construe Plaintiff's allegation as a claim that the

many, many grievances he filed during his incarceration at Marquette[1] are the protected conduct at issue.

Plaintiff offers Defendant Huss's purported deliberate indifference to Plaintiff's serious medical need as the relevant adverse action. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

As explained above, Plaintiff's allegations do not support the inference that Huss was deliberately indifferent. To the contrary, Plaintiff asked Huss to have the mental health staff evaluate him. She told him to file a grievance. He did. He was evaluated. Plaintiff essentially asks the Court to conclude that telling Plaintiff to file a grievance would deter a person of ordinary firmness from filing a grievance. That is nonsensical.

Even if there is something that Huss said or did that might be construed as adverse action, Plaintiff has failed to allege any facts to support the inference that the adverse action was motivated by a retaliatory intent. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that

---

[1] Plaintiff has filed more than a dozen lawsuits in the last couple of years regarding his incarceration at MBP. Huss is named as a defendant in many of them. In each suit, he recounts the filing or voicing of one or more grievances.

in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").

Because Plaintiff does not specify a particular instance of protected conduct, he has not really offered temporal proximity as a possible foundation for his retaliation claim. Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendant Huss's "adverse actions" were motivated by any of his protected conduct. He merely concludes that because he has a reputation for filing grievances, Huss's actions must have been motivated by grievances. Such allegations are insufficient.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Huss and Bailey-Webb will be dismissed for failure to state a claim,

under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Unknown Harris and Unknown Green for deliberate indifference to Plaintiff's serious mental health conditions remain in the case.

An order consistent with this opinion will be entered.


Dated:    September 29, 2022                    /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge